cued was to be considered." I also refer to the case of The Ocean Witch, a schooner of 136 tons, which was towed off the sands in the Thames, where the court awarded £100, "in order to encourage steamers to assist vessels when ashore in the Thames." Shipp. Gaz. Feb. 1853. After duly weighing the considerations which the present case seems to present, my conclusion is that $300 is the proper sum to be awarded to these salvors, and I shall also give them their costs, although in view of the evidence tending to show that either undue haste or a misapprehension on the part of the master of the steamboat caused the claim to be put in suit while it was in a fair way to be settled without expense, I might, were it not a case of salvage, be inclined to withhold them. But I find, on looking into the cases, that the considerations of public policy which so largely affect every award of salvage are not overlooked in disposing of the question of costs, and that I should be departing from the rules usually applied in these cases by withholding costs. Thus, Dr. Lushington, in the case of The Rosalind. 2 Mar. L. C. 220, when he dismissed the libel on the ground that no salvage service had been performed, gave the libellants their costs, "in order to recognize the meritoriousness of their intentions;" and in the case of The Countess of Levin Melville. 1 Mar. L. C. 154, the same learned judge, when pronouncing in favor of a tender made without costs, declared the salvors to be entitled to full costs. So, too, in the case of The Innocenza, when a libel for salvage was dismissed without costs against the salvors. he cites, with approval, the words of Lord Stowell, that, "if, as a general rule. he accompanied a decree (adverse to salvors) with costs, it would discourage other salvors, a class of people not very able to comprehend these matters, and therefore would be likely to injure public interests." See, also, Coote, Prob. Pr. p. 63. A decree must accordingly be entered in favor of the salvors for the sum of $300 and their costs to be taxed.

---

## Case No. 6,641.

HOLMES v. LISSBERGER.

[See Case No. 6,632a.]

---

## Case No. 6,642.

HOLMES et al. v. The LODEMIA.

·[Crabbe, 434.] [1]

District Court, E. D. Pennsylvania. July 16, 1841.[2]

SEAMEN—WAGES—FORBEARANCE—PRESUMPTION OF PAYMENT.

1. A forbearance to sue for nine months, even if the libellant was on the spot and the vessel

---

[1] [Reported by William H. Crabbe, Esq.]
[2] [Affirmed by circuit court; case unreported.]

within the power of the court during that time, does not raise a presumption of payment, either in the admiralty or any other court.

2. The mere naked fact that a plaintiff in the admiralty, or any other court, has discontinued his action, is not a bar to a subsequent suit.

This was a libel for wages [by John Holmes and Samuel Stratton, mariners, against the schooner Lodemia and Eliza, Levi Paine, master].

O. Hopkinson, for libellants.
G. M. Wharton, for respondents.

HOPKINSON, District Judge. John Holmes states that in April, 1839, the schooner Lodemia and Eliza being in the port of Philadelphia, and destined on a voyage to New Orleans and other places, Levi Paine, who was then her master, hired him to serve as a mariner on board of the schooner for her said voyage, at the rate of $16 per month, and he refers to the shipping articles to verify this allegation; he then goes on to allege a faithful performance of his duty for the space of eighteen months; and that he is entitled to the balance of wages due to him for the said service, which he avers is $195 22. The whole amount earned was $288. He allows credits for payment of $97 15, and makes an additional charge of $4 37, making the balance as already stated. The master of the vessel being changed, the answer is put in by William Pierce, the present master, who is also a part owner of the vessel, on behalf of himself and the other owners. The respondent alleges that the shipping articles referred to in the libel are in the possession of Levi Paine and not under his control, and therefore he cannot produce them to the court. In regard to the libellant Holmes, the answer merely avers that he has been paid his wages; that he was discharged from the schooner in October, 1840, and there is nothing due to him. Supposing the time of shipping to be correct,—and there is no denial of it,—the time of the discharge of the libellant, as stated in the answer, agrees with the term of service set forth in the libel, and is so far a confirmation of its truth. The whole defence against Holmes's claim is that he has been paid. Neither the service nor the rate of wages is brought into question. The only evidence of this payment set out in the answer, or relied upon in the argument, is that he "was discharged from the schooner in October, 1840, and, if he had any claim against her, it was in his power fully to bring it forward; that he has lain by, without preferring his claim, till this time—an interval of nine months." The owners of this schooner resided at Melville, in Cumberland county, New Jersey, but the libellant was shipped at Philadelphia, where the schooner then was. The port of her discharge and the termination of the voyage was at Melville. It may be presumed that the seamen, immediately on their discharge, came to this port to seek further employment, and it is no ground of